**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-61981-BLOOM**

RONALD SMITH,

    Petitioner,

v.

FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

**ORDER ON AMENDED PETITION
FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner Ronald Smith's *pro se* Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. [11] ("Petition"). Petitioner challenges the constitutionality of his convictions and sentences in case number 2007-CF-23026 in Florida's Seventeenth Judicial Circuit. *See id*. at 1.

Respondent filed a Response, ECF No. [17], and an Appendix to Response, ECF No. [18], with attached Exhibits 1–25, ECF No. [18-1], Exhibits 26–49, ECF No. [18-2], and Exhibits 50–58, ECF No. [18-3], as well as a Notice of Filing Transcripts, ECF No. [19], with attached transcripts, ECF Nos. [19-1]–[19-3]. The Court has carefully considered the Petition, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is denied.

I.   BACKGROUND

Petitioner was arrested after his common-law wife was found stabbed to death in their home. *See* ECF No. [18-1] at 9–12.[1] On January 10, 2008, Petitioner was indicted in Broward County, Florida for first degree murder with a deadly weapon. *See id.* at 14–15.

A jury trial commenced on September 12, 2011, but on September 14, 2011, the trial court granted Petitioner's motion for a mistrial. *See id.* at 17. Petitioner's basis for moving for mistrial was an alleged change in a witness's testimony. *See* ECF No. [19-1] at 36:19–25, 37:1–25.

After the trial court granted the motion, the court held a hearing regarding the admission of Williams rule evidence and redactions to 911 calls made to police which led authorities to finding the victim's body. *See generally* ECF No. [19-2]. During the hearing, Petitioner sought to exclude a statement on one of the 911 calls in which the victim's daughter alleged that Petitioner called her aunt (Petitioner's sister) after the murder and said, "it's serious this time, it's done[.]" *Id.* at 23:2–3. Petitioner alleged the statement was inadmissible double hearsay, but the State argued it was admissible as a party admission and excited utterance. *See id.* at 23:6–11. The trial court agreed with the State and allowed the statement to remain on the 911 call to be played to the jury at the next trial. *See id.* at 27:8–25, 28:1–13.

Petitioner also filed a pretrial motion seeking to disqualify the Broward County State Attorney's Office from prosecuting him and asking the court to dismiss the indictment due to prosecutorial misconduct. *See* ECF No. [18-1] at 19. In the motion, Petitioner alleged he was entitled to dismissal because the State violated his Fifth and Sixth Amendment rights by

---

[1] For all transcripts, the Court uses the pagination in the original document. For all other filings, the Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

questioning him after he invoked his right to remain silent and right to counsel. *See generally id*. The trial court denied the motion, and Petitioner proceeded to trial thereafter. *See id*. at 33.

The second trial commenced on August 29, 2012, and ended on September 7, 2012. *See generally* ECF No. [19-3]. Petitioner testified in his own defense at trial. *See id*. at 1427–88. Petitioner told the jury the victim lunged at him, and he stabbed her in the back out of instinct in self-defense. *See id*. at 1451:2–22. Petitioner testified that he did not call the police or paramedics because he is an ex-felon and was afraid that they would not believe him. *See id*. at 1452:25, 1453:1–11.

The defense rested its case after Petitioner testified. *See id*. at 1491:12–17. After the State's rebuttal case, the trial court held a charging conference. *See id*. at 1510, 1512–36. Defense requested and received a jury instruction on the justifiable use of deadly force. *See id*. at 1520–34. On September 7, 2012, the jury returned a verdict finding Petitioner guilty as charged. *See* ECF No. [18-1] at 59. Petitioner was adjudicated guilty and sentenced to life in prison without the possibility of parole. *See id*. at 61–67.

On appeal, Petitioner filed an initial brief arguing, among other issues, that the trial court abused its discretion in admitting a statement from the victim's daughter in a 911 call. *See id.* at 115–18. Petitioner argued that the daughter's statement—that Petitioner told his sister it was "serious this time" and he had to "turn himself in"—constituted inadmissible double hearsay. *See id*. The Fourth District issued a written opinion affirming the conviction and sentence. *See Smith v. State*, 186 So. 3d 1056, 1061 (Fla. 4th DCA 2016). The Fourth District concluded that the trial court properly admitted the aunt's statement because it was admissible as an excited utterance. *See id*.

Thereafter, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. See ECF No. [18-2] at 203–39. In the motion, Petitioner argued that:

3

(1) trial counsel was ineffective for coercing him into agreeing to a mistrial; (2) trial counsel was ineffective for failing to file a motion *in limine* to exclude prejudicial testimony; (3) the trial court abused its discretion in granting the motion for mistrial because it did not consider other alternatives before granting the motion; (4) the State violated his Fifth and Sixth Amendment rights by reinitiating interrogation after he invoked his right to remain silent and requested counsel; (5) the trial court abused its discretion in granting the motion for mistrial because there was no manifest necessity for a mistrial; (6) he was entitled to a new trial because the trial judge should have recused himself; (7) the trial court violated his right to be present at all stages of the proceeding by granting the public defender's motion to withdraw at a hearing from which he was absent; (8) his Sixth Amendment rights were violated when defense counsel and the trial court participated in the readback of a State witness's testimony; (9) trial counsel was ineffective for failing to challenge the defective indictment; and (10) trial counsel was ineffective for failing to request a jury instruction on the justifiable use of non-deadly force. *See id*.

The State filed a response to the motion, *see id*. at 241–47, and on September 17, 2020, the court summarily denied the motion for the reasons set forth in the State's response, *see id*. at 249. Petitioner appealed and on May 6, 2021, the Fourth District per curiam affirmed the trial court's order denying postconviction relief. *See* ECF No. [18-3] at 28.

Petitioner filed the instant Petition on November 9, 2021.[2]

## II.  LEGAL STANDARD

### A.   Deference Under § 2254

---

2 "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (internal quotation marks omitted). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

According to AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal

5

habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and footnote omitted). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

**B.   Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential

form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687-88; *see also Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690-91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

## III. DISCUSSION

### A.  Timeliness

Respondent concedes, and the Court confirms, that the Petition was timely filed. *See* ECF No. [13] at 12.

### B.  Exhaustion/Procedural Default

Respondent asserts that Grounds One and Five are procedurally defaulted. *See id.* at 18–21, 33. The Court, however, has the authority to "skip over the procedural default analysis" for a state prisoner's federal claim if it is easier to deny those claims on the merits. *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, it is easier to deny Grounds One and Five on the merits and so the Court will "skip over the procedural default analysis." *Dallas*, 964 F.3d at 1307.

### C.  Ground One

In Ground One, Petitioner argues that the trial court erred in allowing the State to introduce inadmissible double hearsay at his trial. *See* ECF No. [11] at 5. This claim relates to the victim's daughter's testimony in one of the 911 calls that Petitioner called her aunt (Petitioner's sister) after the murder and said "it's serious this time, it's done[.]" ECF No. [19-2] at 23:2–3. Petitioner alleges the admission of this evidence violated his "right to due process." ECF No. [11] at 5. Petitioner raised this issue in claim three of his initial brief on direct appeal; however, he did not argue that the admission of the evidence was a violation of his federal constitutional rights. *See* ECF No. [18-1] at 115–18.

It is well-settled that claims not based on a violation of the United States Constitution are not cognizable under federal habeas corpus review. *See* 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("It is established that [a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (cleaned up).

Federal habeas corpus review of a state law claim is therefore precluded if no federal constitutional violations are alleged. This limitation remains even if the petitioner couches a claim as a federal violation when it actually involves state law issues. *See Branan* v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely couched in terms of equal protection and due process.") (cleaned up).

On appeal, Petitioner cited exclusively to Florida state cases decided on Florida state-law grounds. *See* ECF No. [18-1] at 115–18. Petitioner made no mention of the United States constitution—not even to broad provisions like due process or equal protection. *See id*. Here, although Petitioner added the words "due process" to Ground One, the Court concludes this is merely an attempt to couch Ground One as a federal constitutional violation. *See Branan*, 861 F.2d at 1508. Simply put, deciding this claim would require the Court to decide state law issues surrounding the admissibility of excited utterances and related hearsay provisions under Florida case law and the Florida Rules of Evidence. Because Ground One requires reexamination of state-court determinations on state-law questions, the claim is not cognizable on federal habeas review. *See* Estelle, 502 U.S. at 67–68. Ground One is thus denied.

**D.     Ground Two**

In Ground Two, Petitioner asserts that his trial counsel was ineffective for failing to request a jury instruction on the justifiable use of non-deadly force. *See* ECF No. [11] at 6. Petitioner raised this issue in Claim 10 of his post-conviction motion. *See* ECF No. [18-2] at 203–39. The trial court summarily denied relief on this ground, *see id.* at 249, and the Fourth District per curiam affirmed without issuing a written opinion, *see* ECF No. [18-3] at 28.

At trial, the medical examiner testified that the victim suffered five stab wounds sustained from a sharp knife—including two on her forehead, one on the left side of her head, one on her chin, and one in her back. *See* ECF No [19-3] at 838:19–25, 839:1–4. The stab wound to the victim's back went "from her back to her front, it went through the rib, hit her lung, her lung on the left side collapsed[.]" *Id.* at 852:21–23. The stab wound to the victim's back was lethal and would have killed her even if it was the only wound that she sustained. *See id.* at 851:9–11.

Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See Wilson*, 138 S. Ct. at 1192 (requiring a federal court sitting in habeas to defer to "reasonable" reasons given by the state court in rejecting a claim for relief). The Court first notes that Petitioner requested, and received, a jury instruction on the justifiable use of deadly force. *See* ECF No. [19-3] at 1520–34. Nevertheless, the Court concludes that Petitioner fails to establish prejudice under *Strickland.* After *c*onsidering the weight of the evidence against Petitioner, there is no reasonable probability that the result of the proceeding would have been different if the trial court had instructed the jury on the justifiable use of non-deadly force. *See Lowery v. Cummings*, 255 F. App'x 409, 419 (11th Cir. 2007) (denying habeas relief even though trial counsel may have been deficient for failing to request non-deadly force jury instruction because given the nature and extent of victim's injuries there was no reasonable probability the

jury would have acquitted him or found him guilty of a lesser included offense). Because Petitioner fails to establish prejudice under *Strickland*, Ground Two is denied.

  **E.**  **Ground Three**

In Ground Three, Petitioner argues that trial counsel was ineffective for failing to challenge the defective indictment. *See* ECF No. [11] at 7–8. As stated, Respondent maintains that this ground is unexhausted, but the Court will skip over the exhaustion analysis as it is easier to deny this ground on the merits.

According to Petitioner, the indictment was defective because it charged him with first degree murder with a deadly weapon, and the "deadly weapon" language caused him "irreparable harm making it impossible to marshal a defense." *Id*. at 7. The Court finds this claim meritless. First, as Respondent explains, Florida law expressly proscribes the use and display of a deadly weapon during the commission of offenses. *See* ECF No. [17] at 28–30. Because this conduct is statutorily prohibited, an indictment cannot be defective for charging a criminal defendant for violation. *See id*. Petitioner's claim that including "deadly weapon" language made it impossible for him to "marshal a defense" is also refuted by the record. As stated, Petitioner testified at trial, *see* ECF No. [19-3] at 1427–88, and the jury was instructed on the justifiable use of deadly force, *see id*. at 1520–34. Because this claim is meritless, counsel cannot be ineffective for failing to raise it. *See Chandler*, 240 F.3d at 917. Ground Three is thus denied.

  **F.**  **Ground Four**

In Ground Four, Petitioner argues that his Sixth Amendment rights were violated when defense counsel and the trial judge participated in the readback of a State witness's testimony. *See* ECF No. [11] at 8–9. As Respondent explains, "State witness Shirley Phillips passed away before Petitioner's second trial. As a result, the State elected to have her prior testimony read at trial." ECF No. [17] at 31. The State suggested to "have somebody play Shirley on the stand, I'm the

11

prosecutor, he'd be the Defense, you'd be the Court, we all have our individual roles." ECF No. [19-3] at 5:22–25. Petitioner did not object and the parties proceeded according to this plan. *See* id. at 6:1–4. At trial, defense counsel read the defendant's cross examination questions, and the presiding judge played the role of "the court" and read that portion of the transcript. *See* ECF No. [17] at 31. Petitioner raised this issue in Claim 8 of his post-conviction motion. *See* ECF No. [18-2] at 203–39. The trial court summarily denied relief on this ground, *see id*. at 249, and the Fourth District per curiam affirmed without issuing a written opinion, *see* ECF No. [18-3] at 28.

Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See Wilson*, 138 S. Ct. at 1192. Petitioner claims that the trial judge improperly bolstered the deceased witness's testimony. But, as stated, the trial judge only read the the limited portions of the transcript in which the presiding judge spoke. Petitioner further states that "[t]here is no way that read-back along with counsels lack of awareness resulted in prejudice sway of jury." ECF No. [11] at 9. Liberally construed, the Court understands Petitioner is arguing that the readback resulted in prejudice; however, he fails to provide facts to support his conclusion. *See id*. at 8–9. Petitioner thus fails to establish a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Because there is no showing of trial court error or *Strickland* prejudice, Ground Four is denied.

### G. Ground Five

In Ground Five, Petitioner argues that trial counsel was ineffective for failing to file a motion to dismiss the indictment based on the State violating his right to remain silent. *See* ECF No. [11] at 9–10. This claim is conclusively refuted by the record.

Petitioner's counsel filed a motion to dismiss the indictment based on the State's alleged violation of his right to remain silent, *see* ECF No. [18-1] at 19–22, and the trial court denied the motion, *see id*. at 33. Counsel cannot be deemed ineffective for failure to take action that he did in

12

fact take. *See e.g. Marrett v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 17752375, at *5 (S.D. Fla. Dec. 19, 2022) ("Counsel cannot be deemed ineffective for failing to act when, in fact, he did act."). Ground Five is thus denied.

**H.      Ground Six**

In Ground Six, Petitioner argues that trial counsel was ineffective for coercing him into agreeing to a mistrial. *See* ECF No. [11] at 11–12. Petitioner raised this issue in Claim 1 of his post-conviction motion. *See* ECF No. [18-2] at 203–39. The trial court summarily denied relief on this ground, *see id*. at 249, and the Fourth District per curiam affirmed without issuing a written opinion, *see* ECF No. [18-3] at 28.

Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See Wilson*, 138 S. Ct. at 1192. Prior to granting a mistrial, the trial court conducted the following colloquy with Petitioner:

>THE COURT:  Are you affirmatively asking for this mistrial, Mr. Smith?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Have you gone over this with your lawyers?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Have they explained everything to you?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Have they answered all your questions?
>
>THE COURT: Yes.

ECF No. [19-1] at 49:2–13. The following colloquy also occurred:

>THE COURT: For record purposes, before I sign the magic form here, Mr. Smith, having discussed this with your lawyers, understanding your constitutional rights, it is your request at this time for what?
>
>THE DEFENDANT: A mistrial.

> THE COURT: All right. And the State does not oppose it; is that right?
>
> MR. HOLDEN: I don't think we can.
>
> THE COURT: All right. I'm just going to give the jurors their certificates in the jury room and send them on their way.

*Id*. at 62:23–25, 63:1–9. Solemn declarations in open court carry a strong presumption of verity and Petitioner bears a heavy burden to show his statements were false. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (citations omitted). In his reply, Petitioner claims that his statements above were coerced because his counsel had threatened to withdraw from representing him unless he agreed to a mistrial. *See* ECF No. [25] at 7. Yet, on the same page, Petitioner acknowledges that a mistrial was warranted because "State witness, Shenika Smith changed her testimony in a way that interfered with Petitioner's Defense;" and, because of this, his attorneys told the trial court they were unprepared to go forward, stating: "we believe that we will be ineffectively representing Mr. Smith." *Id*.

Petitioner seems to argue that his counsel was ineffective both for requesting, and not requesting, a mistrial. Nevertheless, the Court finds that the decision to request a mistrial was a strategic one "made after thorough investigation of the law and facts." *Strickland*, 466 U.S. at 690. Such strategic decisions are "virtually unchallengeable," and the Court therefore concludes that counsel did not render deficient performance. *Id*.

Moving to prejudice, Petitioner seems to assert that he would have been acquitted at the first trial but for his attorney's decision. The Court notes that the opposite result was more likely given the witness's surprise change in testimony; however, Petitioner fails to establish prejudice with his speculative and conclusory claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an

ineffective assistance of counsel claim and do not warrant an evidentiary hearing). Thus, Ground Six is denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" he is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists "would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court denies a certificate of appealability on all grounds.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

Case No. 21-cv-61981-BLOOM

1. Petitioner Ronald Smith's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, **ECF No. [11]**, is **DENIED**.

2. A certificate of appealability is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and Petitioner is not entitled to appeal *in forma pauperis*.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 14, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Ronald Smith
655463
Reception and Medical Center-West Unit (Lake Butler)
Inmate Mail/Parcels
Post Office Box 628
Lake Butler, FL 32054
PRO SE